Date signed July 01, 2010



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MARYLAND
### at GREENBELT

| | | |
|---|---|---|
| In Re: | * | |
| **Minh Vu Hoang** | * | Case No.   05-21078-TJC |
| Debtor | * | Chapter   7 |
| In Re: | * | |
| **Thanh Hoang** | * | Case No.   05-25738-TJC |
| Debtor | * | Chapter   7 |
| | * | |
| | * | Jointly Administered Under |
| | * | Bankruptcy No. 05-21078-TJC |

**MEMORANDUM OF DECISION DENYING DEBTOR'S MOTION TO DISMISS [#1230], MOTION TO SUSPEND [#1231] AND MOTION FOR REQUEST OF TRUSTEE'S INFORMATION [#1232]**

This bankruptcy case has been pending since May 10, 2005. The Debtor, Minh Vu Hoang, engaged in a massive scheme in which she acquired hundreds of properties at foreclosure sales using more than 450 sham or fictitious partnerships and other entities. In doing so, she concealed these assets and the income she earned from them from the Internal Revenue Service and the Bankruptcy Court. Gary Rosen, the Chapter 7 Trustee, (the "Trustee") has diligently administered the assets of the estate, including prosecuting

sixty-seven adversary proceedings. Most of these proceedings have been filed to recover real estate that the Debtor acquired with funds which the Trustee and his professionals have had to trace painstakingly through these various sham entities and bank accounts.

Since 2006, the Debtor has not participated in the administration of the estate. Recently, however, she has made numerous and often repetitive filings[1], including a Motion to Dismiss (Docket No. 1230), a Motion to Suspend (Docket No. 1231) and a Motion for Request of Trustee's Collections, Invoices, Bills, Ledgers and/or Spreadsheets (Docket No. 1232).[2] The Court held a hearing on these three motions on June 10, 2010, at which the Trustee appeared and testified by proffer. Mr. David Salem, the Assistant

---

[1] Thang Hoang, joint debtor, has not joined in the motions described, herein.

[2] The Debtor's other recent filings include: Motion to Continue Hearing Scheduled for April 28, 2010 (Docket No. 1239), Points And Arguments filed on April 26, 2010 (Docket No. 1241), Objection To Trustee's Notice Of Private Sale (Docket No. 1247), First Amended Motion to Points And Arguments filed on May 3, 2010 (Docket Nos. 1250 and 1261), Second Amended Motion to Points And Arguments filed on May 3, 2010 (Docket Nos. 1251 and 1260), Motion To Attend Court filed on May 3, 2010 (Docket No. 1252), Third Amended Motion to Points And Arguments filed on May 4, 2010 (Docket No. 1255), Objection to the Chapter 7 Trustee's Notice of Intent to Sell filed on May 7, 2010 (Docket No. 1259), Cover Sheet (Docket No. 1262), Motion to Continue Hearing Scheduled for May 25, 2010 (Docket No. 1266), Response to Trustee's Consolidated Response (Docket No. 1270), Request for Compensation to the Estate Due to Loss and Injury (Docket No. 1271), Motion for Claim on Solvency and Provide Update of the Internal Revenue Service Priority Claim (Docket No. 1276), Objection (Docket No. 1282), and Objection (Docket No. 1292); Limited Objection to Motion for Relief from Automatic Stay as to Property Known As 26132 Viewland Drive, Damascus Maryland (Docket No. 1297); Limited Objection to Motion for Relief From Automatic Stay as to Property Known As 1041 Omar Drive, Crownsville, Maryland (Docket No. 1298); Limited Objection to Motion for Relief From Automatic Stay as to Property Known As 1222 Spruce Avenue, Maryland (Docket No. 1299); Limited Objection to Motion for Relief from Automatic Stay as to Property Known As 442 Poplar Lane, Annapolis Maryland (Docket No. 1300); Adversary complaint against Gary A. Rosen and Roger Schlossberg (Docket No. 1312, AP No. 10-438); Limited Objection to Motion for Relief from Automatic Stay as to Property Known As 442 Poplar Lane, Annapolis, Maryland (Docket No. 1325); Limited Objection to Motion for Relief from Automatic Stay as to Property Known As 26132 Viewland Drive, Damascus, Maryland (Docket No. 1326); Limited Objection to Motion for Relief from Automatic Stay as to Property Known As 1041 Omar Drive, Crownsville, Maryland (Docket No. 1327); Limited Objection to Motion for Relief from Automatic Stay as to Property Known As 1222 Spruce Avenue, Maryland (Docket No. 1328); Motion Seeking Trustee's Redemption of Tax Sale to Protect Alleged Estate Interest in 1222 Spruce Avenue, Maryland (Docket No. 1329); Motion Seeking Trustee's Redemption of Tax Sale to Protect Alleged Estate Interest in 442 Poplar Lane, Annapolis Maryland (Docket No. 1330); Motion Seeking Trustee's Redemption of Tax Sale to Protect Alleged Estate Interest in 1041 Omar Drive, Crownsville, Maryland (Docket No. 1331); Motion Seeking Trustee's Redemption of Tax Sale to Protect Alleged Estate Interest in 26132 Viewland Drive, Damascus, Maryland (Docket No. 1332).

United States Attorney who serves as the lead prosecutor in the Debtor's criminal case, also appeared.

For the reasons set forth herein, the Court will deny the motions to dismiss and to suspend the bankruptcy case. The Court also will deny as moot the motion for request of Trustee's collections etc., but will require the Trustee to continue to serve the Debtor with all filings to the extent required by the Bankruptcy Code and Rules.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The following constitutes the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On May 10, 2005, Minh Vu Hoang (the "Debtor") filed a voluntary petition under Chapter 11[3] of the Bankruptcy Code in this Court. Case No. 05-21078.

On August 31, 2005, the Court appointed Rosen as the Chapter 11 Trustee. Subsequently, on October 28, 2005, the Court converted the case to Chapter 7 and Rosen was appointed as the Trustee.

On July 12, 2005, Thanh Hoang, the Debtor's husband, filed a voluntary petition under Chapter 11. Case No. 05-25738. On September 22, 2005, the Court converted the case to Chapter 7. The next day, the Court appointed Rosen as the Trustee.

By orders entered September 28, 2005, the two bankruptcy cases were ordered to be administered jointly under Case No. 05-21078.

---

[3] Hereinafter, all references to statutes and to chapters will be to the Bankruptcy Code found at Title 11 of the United States Code, 11 U.S.C. § 101 et seq., unless otherwise noted.

3

The Debtor filed her Schedules and Statement of Financial Affairs on or about May 27, 2005. On her Schedule A – Real Property, she listed interests in six parcels of real estate. *See* Docket No. 12 at 18. On her Schedule B – Personal Property, she listed no interests in partnerships, joint ventures or incorporated or unincorporated businesses. Although the Debtor declared under penalty of perjury that the information contained in the Schedules was true and correct, she failed to disclose in the Schedules any ownership interest in numerous properties and partnerships that the Trustee has since uncovered.

The Debtor is incarcerated because she pled guilty to tax fraud and bankruptcy fraud based on actions directly related to this case. The Internal Revenue Service ("IRS") filed a proof of claim asserting a priority claim of $14,063,288.19 and a general unsecured claim of $20,830,933.94.

In her Plea Statement filed in *United States v Minh Vu Hoang*, et al., Criminal No. DKC-07-172 (D. Md.) (Docket No. 175, Jan. 28, 2010), the Debtor admits to the following:

> *The United States and defendant Minh-Vu Hoang agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. The United States and defendant Minh-Vu Hoang further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*
> 
> \* \* \* \* \* \* \*
> 
> From in or about January 2000 until in or about October 2003, MINH-VU HOANG knowingly and willfully combined, conspired, confederated and agreed with others to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the IRS, a bureau of the Treasury Department, and from May 2005 through April 2006, the U.S. Bankruptcy Trustee, a component of the Justice Department. Among other things, MINH-VU HOANG purchased and sold hundreds of foreclosure properties during 2000 through 2005, using the names of her agents, her entities, and other nominees on certain documents related to the purchase of foreclosure properties. She also used and recycled the

4

> names of partnerships and limited liability companies, often reforming the same company with different partners or different asset allocations to conceal her involvement in the purchase and sale of foreclosure properties. In that way, among others, she concealed her control over these assets, and the income generated therefrom, from the IRS and the Bankruptcy Trustee.
>
> * * * * * * *
>
> On or about May 10, 2005, MINH-VU HOANG, filed for a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland. The case was docketed as *In re Minh-Vu Hoang*, Bankruptcy No. 05-21078-TJC, and was overseen by the U.S. Bankruptcy Trustee. On or about May 27, 2005, MINH-VU HOANG, filed several schedules and a Statement of Financial Affairs. When filing her schedules and Statement of Financial Affairs with the Bankruptcy Code, pursuant to her voluntary petition, MINH-VU HOANG declared under penalty of perjury that the information contained in her schedules and Statement of Financial Affairs was true and correct. In her Schedules, MINH-VU HOANG reported a financial interest in only six real properties, knowing that she had an interest in other properties she did not report, and further reported income in 2003 and 2004 of only $96,000 each year, knowing that her income for those years was substantially higher. She also failed to report her interest in various bank accounts.
>
> * * * * * * *
>
> The fact that MINH-VU HOANG maintained an interest in Segal GP and Cybele GP also was not reported in her bankruptcy Schedules.

Trustee's Ex. 1 at p.10. The Debtor and her attorney signed the Plea Statement and she acknowledged that it is true and correct. *Id.* at p. 8, 10.

During the course of this case, the Trustee and his professionals have worked diligently and actively to uncover the scope of the Debtor's fraud and to recover for the estate assets that the Debtor never disclosed. For example, the Trustee filed and prosecuted a complex substantive consolidation action against the bankruptcy estates of the Debtor's siblings, Van T. Vu and Hao Quang Vu. The Trustee filed and is administering bankruptcy cases on behalf of several entities that the Debtor controlled but failed to list on her bankruptcy schedules.

5

The Trustee filed sixty-seven separate adversary proceedings over which this Court has presided or is presiding. In the vast majority of the adversary proceedings, the Trustee sought to recover real property for the estate that the Debtor failed to disclose on her bankruptcy schedules. These proceedings required complex and sophisticated legal and forensic investigation and analysis, involving the tracing of funds and tracking deeds, deeds of trust and other instruments through a myriad of fictitious entities and phony entity names, as well as numerous bank accounts. The Debtor, for example, used the names of more than 450 fictitious or sham partnerships or other entities in her dealings. These adversary proceedings are accompanied by detailed affidavits and are supported by the many exhibits that are necessary to trace the funds and documents that the Debtor used in the pertinent transactions.[4]

The Debtor failed to disclose the assets the Trustee has uncovered and the Trustee has undertaken the foregoing actions, and many others, with no assistance or cooperation from the Debtor. Her fraud is directly responsible for the scope and complexity of the efforts of the Trustee and his professionals.

This case has not languished. To the contrary, these matters have been actively pursued. Their complexity, however, dictates the time and cost necessary to pursue them. In that regard the administrative costs of the estate are very substantial. But the case professionals routinely file their applications for compensation, and the Court has approved them without objection after proper service, including service on the IRS. Further, the Trustee has regularly advised the Court that the IRS (who, as stated above, asserts claims of approximately $14 million in priority claims and $20.8 million in

---

[4] For an example of these adversary proceedings, see the complaint, Rosen v. OFEK, LLC, Adv. Proc. 07-00318.

general unsecured claims), is fully apprised of the proceedings and supports the efforts of the Trustee and his professionals.  The Trustee, the Office of the United States Attorney, the Office of the United States Trustee and the IRS have coordinated their efforts in this case, and the work of the Trustee's forensic accountants—which has been the single largest administrative cost—has been shared among these offices so as to not duplicate effort or costs.  These facts were established by the Trustee and verified by Mr. Salem, who as stated above, is the lead prosecutor of the Debtor's criminal case.  He informed the Court that his office brought a twenty-five count indictment against the Debtor that resulted in her plea agreement.  Both his office and the IRS have used and relied "fairly extensively" upon the work performed by the Trustee's forensic accountant, in particular with respect to the counts asserting bankruptcy crimes.  This work required the accountants to prepare "scores of books" that traced the paper trail of various transactions.  Mr. Salem verified that the Trustee's efforts have been undertaken with the understanding and agreement of the IRS.

As a result of the efforts of the Trustee and his professionals, the Trustee thus far has recovered approximately $13 million for the estate and estimates he may recover another $10 – 14 million.[5]  Despite the Trustee's efforts, under no circumstances will the Debtor receive a distribution in this case.  It has been apparent that the net recoveries available for distribution from the estate will not be sufficient to pay the IRS's priority claim, much less its unsecured claim.  For that reason, the Court previously stayed the adjudication of general unsecured claims until such time, if ever, that it became apparent that a distribution would be available to general unsecured claims.

---

[5] In contrast, the Debtor listed the total value of her assets on her schedules to be $2.5 million.  *See* Docket No. 12 at p. 17.

In approximate numbers, the Trustee currently holds $3.3 million of funds in the various estates.[6] Recognizing that predicting the results of his investigations and litigation activities is tenuous at best, the Trustee feels fairly certain that he will recover another $3.15 million from certain pending matters. The Trustee believes, based on the status of his investigations and pending litigation, that he may recover an additional $8.05 million from various "Suits in Gestation" and "Damages Litigation" although he is less certain of these. Thus, the potential best case for total remaining recoveries plus cash on hand is $14.5 million. The Trustee estimates the additional costs of administration will be $5 million. Therefore, the Trustee's "best case" estimate is that he will have a net of $9.5 million available for distribution to creditors. The Court accepts this analysis by the Trustee as establishing the best potential available distribution to creditors in this case. The Court therefore finds that the Debtor will not receive a distribution in this case.

## CONCLUSIONS OF LAW

*The Motion to Dismiss*.

The Debtor asks the Court to dismiss this case pursuant to 11 U.S.C. § 707. Section 707 provides

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>    (1) unreasonable delay by the debtor that is prejudicial to creditors;
>    (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>    (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

---

[6] As stated above, the Trustee has filed and is administering bankruptcy cases on behalf of several entities that the Debtor controlled but failed to list on her bankruptcy schedules.

11 U.S.C § 707(a). One court described the standards to be applied under § 707(a) as follows:

> The decision on dismissal falls squarely within the sound discretion of the Court and such a decision will be reversed only if the exercised discretion has been abused. *See In re Marks*, 174 B.R. 37, 39 (E.D.Pa.1994). A motion to dismiss a bankruptcy case is a serious matter affecting the rights of the debtor and all creditors, and at the hearing on such a motion, the Court is required to consider the impact that a dismissal will have on the various entities involved in the case and to ascertain which direction satisfies the best interest of all parties. *See In re Price*, 211 B.R. 170, 172 (Bankr.M.D.Pa.1997). The key decision, this Court has held, is whether the dismissal is in the best interests of the creditors and the debtor. *See In re Williamsburg Suites, Ltd.,* 117 B.R. 216, 218 (Bankr.E.D.Va.1990). A voluntary dismissal will normally be denied when the dismissal will cause some plain legal prejudice to the debtor's creditors. *See In re Carroll,* 24 B.R. 83, 86 (Bankr.N.D.Ohio 1982). Legal prejudice is found to exist where assets which would otherwise be available to the creditors are not available because of the dismissal. *See In re Komyathy*, 142 B.R. 755, 757 (Bankr.E.D.Va.1992).

*In re McCullough*, 229 B.R. 374, 376 (Bkrtcy. E.D.Va. 1999).

Section 707(a) provides no support for Debtor's motion to dismiss this case. The case is being properly and diligently administered. The interests of the creditors and the estate are best served by allowing the Trustee to continue to administer the estate, including ferreting out the remaining undisclosed assets of the estate.

The Debtor attempts to establish "cause" to dismiss this case several ways, none of which are persuasive. She primarily argues that the case has gone on for too long and the administrative costs are too high. There is, of course, obvious irony in Debtor's lament that it has taken the Trustee many years and substantial expense to uncover the breadth and scope of her fraud. To the extent anything more needs to be said on this point, the Court finds and concludes that, while the administrative costs have been high,

they have been necessary to unravel the vast and tangled web of fictitious and fraudulent activities by the Debtor.

The Debtor also points out that the Trustee contends that the Debtor has acted in bad faith and is dishonest. The Debtor, citing several cases, argues that bad faith and dishonesty by a debtor are grounds for dismissal. Her point is frivolous. Bad faith and dishonesty by a debtor are grounds for dismissal when it is in the creditor's best interest to do so, and are not meant to allow a debtor to escape the scrutiny of a trustee and the Court.[7]

Debtor also contends "cause" to dismiss the case exists because she received ineffective advice of counsel when she filed the case, and therefore her constitutional rights were violated. Assuming that Debtor fully disclosed to her counsel the breadth and scope of her pre-petition activities and she nevertheless received bad bankruptcy legal advice, Debtor's complaint lies with her counsel. Moreover, the Debtor complains of ineffective assistance only from the first attorney who represented her in this case. She was represented subsequently by at least three other attorneys, against none of whom does she assert any complaint. Finally, a debtor has no constitutional right to counsel in bankruptcy. *In re Taylor*, 357 B.R. 360, 366 (Bkrtcy. W.D. Pa. 2006). The advice Debtor received five years ago when she filed this case is not a factor the Court will consider in whether to dismiss the case at this time.

Finally, the Debtor contends that the IRS is her only creditor and she can work out her tax liability with it outside of bankruptcy. The short answer to this contention is that 34 creditors in addition to the IRS have filed proofs of claim. *See* Claims Register. A

---

[7] Of course, bad faith and dishonesty on the part of a debtor can result in the denial of the debtor's discharge. Here, the Debtor has consented to the denial of her discharge. *See* Docket Nos. 487 and 488.

10

number of these creditors were quite active early in the case before the size of the IRS's priority claim was understood. *See e.g.*, Docket No. 89, Joinder of Creditors Thomas Tsianakas, Ionna Tsianakas, Hoang Nguyen, and Elena Pope in Motion for Substantive Consolidation. Therefore, the Debtor's contention that the IRS is her only creditor fails.[8]

The Court reviewed the numerous other reasons asserted by the Debtor to establish "cause" to dismiss this case and finds them to be without merit. Accordingly, the Court will deny the Debtor's motion to dismiss.

*The Motion to Suspend.*

In the motion to suspend, the Debtor contends that she is working to resolve her tax liability with the IRS and requests the Court to suspend the bankruptcy case until that occurs. But given the amount of time that this case has been open and the Trustee's efforts to administer the estate, a potential resolution with the IRS does not warrant suspension of the case. The motion to suspend will be denied. In the event the Debtor, the Trustee and the IRS reach a resolution on the amount of the IRS's claims, the matter can be revisited at that time, taking into account the interests of the remaining creditors and the status of the Trustee's administration.

*The Motion for Request of Trustee's Collections, Invoices, Bills, Ledgers and/or Spreadsheets.*

In this motion, the Debtor states that she has not received any information regarding the Trustee's expenses, fees and costs from the case and asks for detailed financial information on the estate. This claim is highly suspect, since the Trustee's counsel stated at the hearing that the Trustee serves the Debtor with all filings as required by the Bankruptcy Code or Rules. In any event, in response to the Debtor's motion, the

---

[8] In so ruling, the Court does not mean to imply that dismissal would be appropriate if, in fact, the IRS were her only creditor.

11

Trustee served the Debtor with his 90-page Cash Receipts and Disbursements Record, U. S. Trustee Form 2, which shows the cash receipts and disbursement for the life of the case. *See* Docket No. 1237, Ex. 1-4. This motion is therefore moot.

*The Debtor's Standing*.

It is well established that an insolvent Chapter 7 debtor lacks standing to challenge case administration matters because the debtor lacks a pecuniary interest in the distribution of assets among the debtor's creditors. In *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985), the court held that an insolvent Chapter 7 debtor lacks standing to challenge the proposed sale of estate property because the debtor lacks a pecuniary interest in the result of the sale. In reaching its decision, the Court relied on the principle, in the analogous setting of whether an insolvent debtor may object to the allowance of claims against the estate, that, "an insolvent debtor is not a party in interest and thus lacks standing because he has no pecuniary interest in the distribution of his assets among his creditors." *Id.* (citing 3 J. Moore & L. King, Collier on Bankruptcy ¶57.17[2.1], pp. 275-277 (14th ed. 1977); 3 L. King, Collier on Bankruptcy ¶502.01[2] (15th ed. 1985)); *See also Yadkin Valley Bank and Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993) (The term "party-in-interest" is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceeding.").

The record establishes that the Debtor will not receive any distribution from this estate. The IRS has filed a $14 million priority claim and a $20.8 million unsecured

claim. Despite the efforts of the Trustee, there will be insufficient amounts to pay those claims in full. Ordinarily, these facts would be sufficient to deny standing to the Debtor.[9]

Here, however, the Debtor has waived her discharge. *See* Docket Nos. 487 and 488. Case authority supports the principle that *Willemain* does not apply where a debtor is denied a discharge, because bankruptcy actions could have an effect on the amount of the nondischarged claims that the debtor remains obligated to pay once the automatic stay is terminated. *See McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996).

The Debtor is advised, however, that the equities of the case weigh very heavily against her. In many of her recent filings, she challenges the time and costs of the Trustee's administration. While the Court itself has addressed the costs of this case with the Trustee on a number of occasions, it does not sit well for the Debtor to make this complaint. Both the time and cost of the case are directly attributable to the size and scope of her fraudulent activities. The Debtor has taken no action to assist the Trustee in his efforts to uncover estate properties and for four years she has raised no objection while the Trustee has administered the case. Now, incarcerated for actions directly related to this case, the Debtor apparently has substantial amounts of time on her hands and has taken to making numerous repetitive and often frivolous filings. *See supra*, n.1. But neither the Trustee nor the Court shall serve as the Debtor's muse. The Debtor is forewarned: While the Court will not deny standing to the Debtor at this time, frivolous and multiple filings by the Debtor may result in the Court barring any further filings by her.

---

[9] At the hearing on June 5, 2010, the Court announced it would deny the Debtor standing to object to case administration matters. On reflection, because the Debtor has waived her discharge, the Court will not deny the Debtor standing as discussed in the text.

## CONCLUSION

The Court will issue an order consistent with this memorandum.


Copies to:

Debtor
Chapter 7 Trustee
Chapter 7 Trustee's Counsel
United States Trustee

**END OF MEMORANDUM**