Date signed March 28, 2014



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at GREENBELT

| | |
|---|---|
| In Re: | |
| Minh Vu Hoang and Thanh Hoang | Case No.    05-21078-TJC |
| | Case No.    05-25738-TJC |
| Debtors | Jointly Administered Under |
| | Case No.    05-21078-TJC |
| | Chapter    7 |

### MEMORANDUM OF DECISION

Gary A. Rosen, the chapter 7 trustee (the "Trustee"), seeks an order holding the debtor Minh Vu Hoang (the "Debtor") in contempt for her failure to comply with an order of the court requiring the Debtor to turnover to the Trustee 48.070 carats of diamonds or the value of the diamonds within fourteen days.  *See* Docket No. 2165.  In a memorandum of decision that accompanied the turnover order, the court found that the Debtor used funds that were property of the estate to acquire the diamonds without the Trustee's knowledge or consent.  The Debtor has failed to comply with the order, and the Trustee seeks an order of contempt and sanctions intended to coerce the Debtor into performance.

The court finds that the Debtor willfully disobeyed the turnover order by failing to deliver the estate property or the value of the diamonds to the Trustee.  The court will sanction the

1

Debtor as described herein until the Debtor purges the contempt by complying with the turnover order.

## Jurisdiction

This court has subject-matter jurisdiction over this motion pursuant 28 U.S.C. §1334 and Local Rule 402 of the United States District Court of the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (E), and (O).

## Background

On May 11, 2005, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  She served as debtor-in-possession until the court appointed Rosen as the chapter 11 trustee on August 31, 2005.  The case was converted to chapter 7 on October 28, 2005, and Rosen was appointed to serve as trustee.[1]

On May 27, 2005, the Debtor filed her schedules and statement of financial affairs. Docket Nos. 12, 16.  On her Schedule A - Real Property, she listed interests in six parcels of real estate.  *See* Docket No. 12 at 18.  On her Schedule B - Personal Property, she listed no interests in partnerships, joint ventures, or incorporated or unincorporated businesses.  *See* Docket No. 12 at 19-21.  She listed $2,000 of furs and jewelry.  *Id.* at 19.

Although the Debtor declared under penalty of perjury that the information contained in the schedules was true and correct, she failed to disclose any ownership interests in numerous properties and partnerships that the Trustee has since uncovered.  The Debtor was involved prepetition and post petition in a real estate "flipping" scheme and used sham business entities to avoid reporting income to the Internal Revenue Service.  She failed to disclose any of these assets in her bankruptcy schedules or statement of financial affairs.  During the pendency of this

---

[1]  The Debtor's spouse, Thanh Hoang, filed a voluntary petition under chapter 11 on July 12, 2005.  Case No. 05-25738-TJC.  The case was eventually converted to chapter 7, and it is now jointly administered with the Debtor's case, under Case No. 05-21078.  Rosen serves as the chapter 7 trustee in both of the jointly administered cases.

bankruptcy case, the Debtor was incarcerated for three years on tax and bankruptcy fraud based

on her actions directly related to this bankruptcy case.  In her Plea Statement filed in *United*

*States v. Minh Vu Hoang, et al.,* Criminal No. DKC-07-172 (D. Md.) (Docket  No. 175, Jan. 28,

2010), the Debtor admitted to the following:

> *The United States and defendant Minh-Vu Hoang agree that if this case*
> *proceeded to trial, the United States would prove the following facts below*
> *beyond a reasonable doubt. The United States and defendant Minh-Vu*
> *Hoang further stipulate and agree that these are not all of the facts that*
> *the United States would prove if this case proceeded to trial.*
>
> * * * * * * *
>
> From in or about January 2000 until in or about October 2003, MINH-VU
> HOANG knowingly and willfully combined, conspired, confederated and
> agreed with others to defraud the United States by impeding, impairing,
> obstructing, and defeating the lawful functions of the IRS, a bureau of the
> Treasury Department, and from May 2005 through April 2006, the U.S.
> Bankruptcy Trustee, a component of the Justice Department. Among other
> things, MINH-VU HOANG purchased and sold hundreds of foreclosure
> properties during 2000 through 2005, using the names of her agents, her
> entities, and other nominees on certain documents related to the purchase
> of foreclosure properties. She also used and recycled the names of
> partnerships and limited liability companies, often reforming the same
> company with different partners or different asset allocations to conceal
> her involvement in the purchase and sale of foreclosure properties. In that
> way, among others, she concealed her control over these assets, and the
> income generated therefrom, from the IRS and the Bankruptcy Trustee.
>
> * * * * * * *
>
> On or about May 10, 2005, MINH-VU HOANG, filed for a voluntary
> petition under Chapter 11 of the Bankruptcy Code in the United States
> Bankruptcy Court for the District of Maryland. The case was docketed as
> *In re Minh-Vu Hoang*, Bankruptcy No. 05-21078-TJC, and was overseen
> by the U.S. Bankruptcy Trustee. On or about May 27, 2005, MINH-VU
> HOANG, filed several schedules and a Statement of Financial Affairs.
> When filing her schedules and Statement of Financial Affairs with the
> Bankruptcy Code, pursuant to her voluntary petition, MINH-VU HOANG
> declared under penalty of perjury that the information contained in her
> schedules and Statement of Financial Affairs was true and correct. In her
> Schedules, MINH-VU HOANG reported a financial interest in only six
> real properties, knowing that she had an interest in other properties she did
> not report, and further reported income in 2003 and 2004 of only $96,000
> each year, knowing that her income for those years was substantially
> higher. She also failed to report her interest in various bank accounts.
>
> * * * * * * *

> The fact that MINH-VU HOANG maintained an interest in Segal GP and
> Cybele GP also was not reported in her bankruptcy Schedules.

*Id. quoted in* Mem. of Decision, Docket No. 1371 at 4-5.

During the course of this case, the Trustee and his professionals have worked actively to uncover the scope of the Debtor's fraud and recover assets that the Debtor failed to disclose that can be liquidated for the benefit of the estate. This effort includes bringing more than 65 adversary proceedings seeking to recover assets and other property that is property of the estate or traceable to property of the estate.

*The Turnover Action.*

On December 16, 2010, the Trustee filed a motion to compel the Debtor to turnover diamonds and other jewelry totaling in excess of $500,000 that she allegedly acquired in six separate transactions using property of the estate. Docket No. 1567 at 3-6. The Debtor filed an opposition to the motion, Docket No. 1583, and the parties were given an opportunity for discovery and hearing preparation. Ultimately, the Trustee limited the action to seeking to recover 48.070 carats of diamonds having a value of approximately $180,000.

The court held hearings on the turnover motion on December 1, 2011, January 31, 2012, February 1 and 8, 2012, and March 2 and 9, 2012. The Debtor was incarcerated, and she participated at the hearings by telephone. The hearings were spread out in part because the court took steps to be sure that the Debtor had all exhibits with sufficient time for review and to accommodate the Debtor's availability. *See, e.g.*, Docket No. 1962, Tr. 73:18-74:1; Tr.70:25-71:5. The court pointed out to the Debtor the severity of the Trustee's allegations on several occasions. *See, e.g., id.* at 72:21-73:12. The Debtor asserted her Fifth Amendment rights and did not testify, *id.* at 75:6-21, but otherwise vigorously challenged the Trustee's contentions and cross-examined witnesses.

4

On September 20, 2012, the court issued a memorandum of decision granting the turnover motion.  Docket No. 2164.  As stated in the memorandum, the court found that the Debtor acquired the diamonds with funds that were traceable to property of the estate, and thus, constituted proceeds of property of the estate.  As such, the diamonds were property of the estate under 11 U.S.C. §541(a)(7) and subject to the Trustee's turnover rights.  The court entered an order requiring the Debtor to turnover to the Trustee the diamonds or the value of the diamonds within fourteen days.  Docket No. 2165.

The Debtor filed an appeal, and on September 6, 2013, the District Court affirmed the bankruptcy court's order.  *See Hoang v. Rosen,* No. 12-cv-03184, 2013 WL 4804822 (D. Md. Sept. 6, 2013).  On February 25, 2014, the United States Court of Appeals for the Fourth Circuit affirmed for the reasons stated by the District Court in its opinion.  *Hoang v. Rosen,* No. 13-2233, 2014 WL 703878 (4th Cir. Feb. 25, 2014).

*The Contempt Hearing.*

While the Debtor's appeal was pending, the Trustee filed the motion to hold the Debtor in contempt[2] for her failure to deliver the diamonds or the value of the diamonds.  Docket No. 2355.  The Debtor opposed the motion, Docket No. 2368, and the court held a hearing on October 8, 2013.  The Trustee testified that the Debtor had not delivered the diamonds or the value of the diamonds to him in accordance with the turnover order.  The Debtor appeared and testified that she never had the diamonds in her possession.  Docket No. 2403, Tr. 23:23-24:21. In closing argument, after the Debtor was excused from the witness stand, she argued that she had no ability to comply with the turnover order by paying for the value of the diamonds.

**Analysis**

---

[2]  Although the Trustee's motion originally requested a finding of civil and criminal contempt, at the contempt hearing the Trustee acknowledged this Court's lack of authority to find a party in criminal contempt and limited his request to civil contempt.

A contempt order is a "potent weapon," *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201 (1967), *quoted in King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995), and civil contempt powers are expressly granted to a bankruptcy court:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. §105(a); s*ee also Burd v. Walters*, 868 F.2d 665, 670 (4th Cir. 1989) (delegating civil contempt powers to a bankruptcy court does not offend the Constitution).

To establish civil contempt, the Trustee must prove four elements by clear and convincing evidence:

> (1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. The Kittinger Co.,* 792 F. Supp. 1397, 1405-6 (E.D. Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir. 1994)).  Civil contempt is "considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.  Neither a jury trial nor proof beyond a reasonable doubt is required."  *Int'l Union, United Mine Workers of America v. Bagwell (Bagwell)*, 512 U.S. 821, 827, 114 S.Ct. 2552 (1994).

Here, all four elements have been met.  The turnover order is a valid decree of which the Debtor had actual knowledge and the order was in the Trustee's favor.  The Debtor has not

delivered the diamonds or the value of the diamonds to the Trustee as required by the order.[3] The estate has been damaged because the funds used by the Debtor to acquire the diamonds are not available for the Trustee's administration and, as has been repeatedly established throughout this case, not all creditors will be paid.  The Trustee has made a prima facie case for civil contempt.

"Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Electrical Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Service Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citing *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548 (1983)).  A present inability means that the contemnor's inability to comply arose after the turnover order.  *In re Gentry*, 275 B.R. 747, 753 (Bankr. W.D. Va. 2001) (citing *Oriel v. Russell*, 278 U.S. 358, 363, 49 S.Ct. 173 (1929)).  If compliance with the subject order is impossible, the court cannot enter an order for civil contempt.  *Rylander,* 460 U.S. at 757; *Maggio v. Zeitz,* 333 U.S. 56, 75-76, 68 S.Ct. 401 (1948). The burden of production falls on the contemnor to prove that compliance with the court order is now impossible.  *Rylander* at 757.  The contemnor must show more than a "mere assertion of inability and establish that [she] has made in good faith all reasonable efforts" to comply.  *In re Lawrence,* 251 B.R. 630, 651 (S.D. Fla. 2000) (citing *CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1528 (11th Cir. 1992)).

The contemnor, however, may not defend the contempt by challenging the underlying order.  In *Maggio,* 333 U.S. 56, the debtor's president failed to turnover assets in a bankruptcy

---

[3]  The Debtor certainly has had ample time to comply with the turnover order.  The Trustee could have pursued enforcement of the order after the Debtor failed to comply with its requirements in September 2012, but it was well within his discretion to wait until the District Court affirmed this court's order.  The result is that the Debtor had more than a year to comply with the turnover order before the Trustee filed the contempt motion.

proceeding, and the president was found in civil contempt. *Id.* at 68. The Supreme Court, relying on pre-code turnover law, held that a turnover order is a final order, and "becomes res judicata and not subject to collateral attack in . . . contempt proceedings." *Id.* at 68. In a subsequent case, *Rylander*, 460 U.S. 752, the Court was called upon again to review a contempt order, although the underlying order was not a turnover order, but an order enforcing a summons for corporate books and records. *Id.* at 753. The Court concluded that relitigation of the enforcement order was not permissible on the ground that the defendant did not have possession or control of the books and records during the enforcement proceeding, and the Court again held that the defendant could only "defend the contempt charge on the ground that he was *then* unable to comply because he lacked possession or control." *Id.* at 757.

Here, at the contempt hearing, the Debtor testified that she cannot comply with the order because she never possessed the diamonds. This was simply an impermissible collateral attack on the turnover order. The Debtor raised this defense during the turnover litigation and was given every opportunity to participate in the litigation and defend against the claims against her. The Debtor failed to testify or present any evidence, and merely asserted that she did not acquire the diamonds. This court ruled that the uncontroverted evidence established that the Debtor received the diamonds, and the court entered the turnover order. The District Court affirmed this court's decision and, as stated above, the decision of the District Court has now been affirmed by the Fourth Circuit. Thus, the Debtor's claim that she never acquired the diamonds is not a defense to the contempt charge.

In closing argument at the contempt hearing, after the Debtor was excused from the witness stand, the Debtor argued that she was indigent and had no ability to pay the Trustee. The court is skeptical of the Debtor's statements for several reasons. For one, the Debtor did not

make these statements while she was under oath on the witness stand.  Moreover, the Trustee's evidence in the many adversary proceedings and contested matters he filed has established that millions of dollars flowed through various fictitious entities and accounts that were in control by the Debtor, before and after the petition date.  Despite the Trustee's diligent efforts, even he would be hard pressed to claim he was successful in uncovering every such transaction.  Thus, cash and other valuable assets remain unaccounted for even after nine years of investigations.

A recent filing by the Debtor adds to the court's skepticism.  The Debtor filed a motion to require the Trustee to abandon an asset to her.  Docket No. 2280.  Along with that motion, she filed a motion to proceed in that contested matter *in forma pauperis*.  Docket No. 2288.  In support of the latter motion, she submitted an "affidavit" which was not under oath, and which stated she had no income.  *Id.* at 2.  However, the "affidavit" did not state the Debtor had no assets, nor did the Debtor submit a standard *in forma pauperis* form, which addresses a broader category of resources than simply income.  The court set the matter for a hearing by order, requiring the Debtor to appear and testify under oath on the extent of any resources or assets available to her.  Docket No. 2301.  In doing so the court noted

> At a recent pretrial conference [in an adversary proceeding brought by the Trustee], the Chapter 7 Trustee informed the Court that the property [that the Debtor claims she owns either directly or through an entity] is generating $1,800 of income each month that has been paid to [the Debtor's] sister or niece for the past several years, for a total amount in excess of $100,000. Thus, it appears that an entity [the Debtor] contends she owns is entitled to receive income of $1,800 per month, and this is left unaddressed in the application.

*Id.* at 2.  Rather than appear at the hearing and testify on the extent of her resources, the Debtor withdrew the motion to proceed *in forma pauperis*.

The court concludes that the Debtor's statements in closing argument failed to meet her burden of rebutting the Trustee's prima facie case.  Accordingly, the court finds the Debtor in civil contempt.

## Sanction

Civil contempt is "specifically designed to compel the doing of some act.  One who is fined unless by a day certain he [does what the act ordered], has it in his power to avoid any penalty.  And those who are imprisoned until they obey the order, carry the keys of their prison in their own pockets."  *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 633, 108 S.Ct. 1423 (1988) (internal quotations and citations omitted); s*ee Bagwell,* 512 U.S. at 829 ("A contempt fine . . . is considered civil . . . if it either coerces the defendant into compliance with the court's order or compensates the complainant for losses sustained.").

The Debtor's use of estate assets to acquire the diamonds is not by any means the only loss the Debtor has imposed on the estate.  As has been well documented, the Debtor did not participate in this case or otherwise cooperate with the Trustee before she was incarcerated.  *See* Mem. of Decision, Docket No. 1371 at 2.  Since being incarcerated and subsequently released from prison, she has repeatedly made numerous and frivolous filings challenging the Trustee's administration and imposing additional costs on the estate.  *Id*. at 13 ("Now, incarcerated for actions directly related to this case, the Debtor apparently has substantial amounts of time on her hands and has taken to making many numerous and repetitive filings."); *see also Hoang*, 2013 WL 4804822 at *3, n.5 ("Adding to the irony is the fact that Debtor's repeated and often frivolous challenges inevitably result in even greater fees, adding to the millions of dollars she will eventually owe, which the creditors–primarily, the government–are unlikely to collect.").

Indeed, it is beyond dispute that the Debtor's filings have added unnecessarily to the time and cost of administering the estate. The Trustee has filed an action seeking, among other things, reconsideration of this court's ruling granting the Debtor standing to participate in the case, notwithstanding the virtual certainty that creditors will not be paid.[4] The sanction imposed here makes the Trustee's action moot, at least perhaps temporarily, but the Trustee's action and the District Court's observation support the conclusion that the Debtor's often frivolous filings have imposed unnecessary costs on the parties who will directly bear them–the creditors of the estate.

The court will bar the Debtor from participating or making any filings in this case, her spouse's jointly administered bankruptcy case (Case No. 05-25738), related bankruptcy cases,[5] and related adversary proceedings until she complies with the turnover order.[6] This sanction is not intended to punish the Debtor for her past actions. Rather, it is intended to coerce the Debtor into complying with the order. If the Debtor truly believes the many filings she makes in the bankruptcy case and related adversary proceedings have merit, then she will be motivated to comply with the turnover order. Further, this sanction is intended to compensate the estate, at least on a going-forward basis. By eliminating the Trustee's need to address the Debtor's

---

[4] This court previously ruled that the Debtor has standing, even though creditors will not be paid in full. *See* Docket No. 1371 at 12-13. In *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985), the court held that an insolvent Chapter 7 debtor lacks standing to challenge the proposed sale of estate property, relying on the principle that "an insolvent debtor is not a party in interest and thus lacks standing because he has no pecuniary interest in the distribution of his assets among his creditors." *Id.* (citing 3 J. Moore & L. King, Collier on Bankruptcy ¶57.17[2.1], pp. 275-277 (14th ed. 1977)). In *McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996), the Circuit Court held that the rationale of *Willemain* does not apply where a debtor is denied a discharge, because bankruptcy actions could have an effect on the amount of the nondischarged claims that the debtor remains obligated to pay. *McGuirl,* 86 F.3d at 1235. In *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003), the Court of Appeals cited approvingly to *McGuirl* in holding that an insolvent debtor has standing to challenge the estate's professional fees because there were insufficient funds in the estate to pay nondischargeable priority claims, thus affecting the debtor's personal liability.
[5] Related bankruptcy cases include Minbilt Realty, Inc. (Case No. 05-90379), Cybele General Partnership (05-90432), and Ethan Allen General Partnership (07-21006).
[6] The sole exception to this sanction will be that the Debtor is allowed to participate in the Internal Revenue Service's proof of claim litigation that is currently underway. *See* Docket Nos. 2041, 2115, 2125, 2222, 2279.

actions, the Trustee will be able to administer the estate on a more efficient, less-costly basis. Thus, while this benefit to the estate may be an indirect result of the sanction, the sanction nevertheless will have a positive economic effect on the estate until the Debtor complies with the order.

In imposing this sanction, the court is rejecting the Trustee's request to incarcerate the Debtor at this time.  The Debtor already has served a three-year prison term for her fraud in connection with this case, and that has not encouraged the Debtor to cooperate with the Trustee. The Court concludes on balance that the sanction imposed here is the best alternative available under the circumstances for coercing the Debtor while at the same time compensating the estate.

**Conclusion**

For the foregoing reasons, the Court holds the Debtor in contempt for her failure to comply with the turnover order and will sanction the Debtor as described herein.  A separate order will issue.

cc:    Debtors
       Chapter 7 Trustee
       Chapter 7 Trustee's Counsel
       United States Trustee

**END OF MEMORANDUM**